UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| KEVIN POLOVINO *et al.*, | ) |
| --- | --- |
| Plaintiffs, | ) |
| v. | ) Case No. 15-CV-023-JHP-PJC |
| Action No. 15CV-023-JHP PJC INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL-CIO, *et al.*, | ) |
| Defendants. | ) |

**OPINION AND ORDER**

This matter is before the Court on the motion of defendant Edwin D. Hill ("Hill"), for dismissal pursuant to Rules 12(b)(2), (5) and (6) of the Federal Rules of Civil Procedure. (Dkt No. 10) For the reasons set forth below, the motion is granted and the complaint is dismissed with prejudice because: (1) it fails to state a claim due to its failure to comply with the basic requirements of Fed. R. Civ. P. 8; (2) it fails to establish that this Court has personal jurisdiction over Hill; and (3) the plaintiffs failed to serve Hill within the time limits of Fed. R. Civ. P. 4(m).

**DISCUSSION**

The plaintiffs filed their complaint against defendants International Brotherhood of Electrical Workers, AFL-CIO ("IBEW"), and Hill on January 14, 2015. The IBEW was served on May 13, 2015, and Hill was served on May 16, 2015.[1]

---

[1] Defendant IBEW filed a separate Motion to Dismiss.

Initially, the Court notes that excluding the caption page, the complaint is only two and a half pages long and does not include a section setting forth either counts or causes of action. It is comprised of four sections: the Introductory Statement, Jurisdiction and Venue, Parties, and Class Action.

The complaint does not list Hill as a party to the case in the Parties section (Compl. ¶¶ 2.1-2.2.) Instead, Hill is listed in the caption, and is briefly referenced in the Introductory Statement section. (*Id*. at 2.)

The Introductory Statement provides a cursory and disjointed narrative of the alleged wrongful conduct. In generalized terms, Plaintiffs allege that the IBEW "directed" Local Union No. 584 "to engage in collusion with unionized employers" that are involved in the construction of "a large commercial facility for Google." (Complaint ("Compl.") at 2.)[2] The complaint, however, fails to identify the name and location of the facility, the nature of the alleged collusion, and the dates on which said collusion occurred. The complaint further states that because Local Union No. 584 refused to engage in collusion:

> [T]he International office of the IBEW, in the person of Edward [sic] Hill, traveled to Tulsa and summarily discharged all of Local 584's administrative staff. Hill and the IBEW's conduct of engaging in practices that the IBEW knew violated federal labor laws [sic]. Such practices include:
>
> 1. The IO [IBEW International Office] decision to remove all employees of Local 584 in the process of terminating electricians such as the plaintiffs without notice, cause, or reason;

---

[2] This order will cite to the page numbers of the complaint where Plaintiffs have failed to provide numbered paragraphs.

2. The IO's authorization of [unionized employers] to create and implement a Black List based on self-serving premises that destroyed Plaintiffs' marketability, de-stabilized their finances and substantially harmed their careers; and

3. Created and publicized, nation-wide, the Black List which harmed Plaintiffs' ability and/or opportunity for any employment in any market in the United States and elsewhere in the world.

(Compl. at 2-3.)

The Introductory Statement concludes by stating that the "IBEW's conduct violates federal and state labor laws, including Section 101(a)(1) of the Labor-Management Relations Act, the Labor Management Relations Act, 29 § 141 et seq., as well as purposely avoided its duty of fair representation for Plaintiffs." (Compl. at 3.) The complaint does not identify which state labor laws the defendants allegedly violated. Moreover, the only federal statute cited by Plaintiffs in this section – "Section 101(a)(1) . . . 29 [U.S.C.] § 141 et seq." – does not exist. Plaintiffs' citation to 29 U.S.C. § 141 *et seq.*, presumably is to the Labor-Management Relations Act of 1947. That Act, however, does not contain a "Section 101(a)(1)." And nothing more is alleged on the "duty of representation for Plaintiffs" other than the single, passing reference quoted above. (Compl. at 3.)

The other sections of the complaint are even less specific when trying to discern what legal claims the plaintiffs assert. For example, paragraph 1.1 of the Jurisdiction and Venue section states simply – without any elaboration – that the Court has jurisdiction pursuant to "[1] 28 U.S.C. § 1343(3) and (4), [2] 28 U.S. [sic] § 1341 and [3] 28 U.S.C. § 1331, [4] 42 U.S.C. § 1981 et seq., and [5] 29 U.S.C. 626 (b)."

Presumably, with respect to their first alleged basis for jurisdiction, Plaintiffs intended to cite 28 U.S.C. § 1343(a)(3) and (4). Those statutory provisions confer jurisdiction upon federal district courts over cases concerning the deprivation of civil rights under color of state law, including the right to vote. The few facts Plaintiffs allege in the Introductory Statement, however, say nothing of civil rights deprivations, nor do Plaintiffs allege that the defendants were acting under "color of state law." The second statute cited, 28 U.S.C. § 1341, prohibits district courts from enjoining the "assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." The citation to this provision is unclear as well.

The third jurisdictional statute cited, 28 U.S.C. § 1331, confers upon federal district courts jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." As stated above, however, Plaintiffs have failed to identify which federal laws they believe the defendants have violated. The fourth statute invoked, 42 U.S.C. § 1981, confers upon federal district courts jurisdiction over cases concerning certain forms of racial discrimination by employers. The complaint has made no allegations of racial discrimination. The fifth provision cited, 29 U.S.C. § 626(b), is the remedial provision of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq*. The complaint contains no allegations of age discrimination.

Paragraph 1.2 of the Jurisdiction and Venue section simply states that, pursuant to 28 U.S.C. § 1367, the "Court has supplemental jurisdiction over the state law claims." The complaint, however, does not identify any state law claims.

Paragraph 3.1 of the Class Action section requests class certification for electricians whose names allegedly appear on black lists "managed by unionized contractors" and "endorsed and performed by the IBEW and Edwin Hill." (Compl. ¶ 3.1.) Subsection a. provides that class certification is warranted because the questions of law and fact common to the class are that "the IBEW violated the LARA, the LMRDA, did not fairly represent plaintiffs, or observe Oklahoma labor and employment laws." (Compl. ¶ 3.1 a.) The Plaintiffs do not explain what "LARA" is and, as with the Introductory Statement, Plaintiffs once again fail to specify which sections of the LMRDA and state labor and employment laws the IBEW and Hill have allegedly violated.

Finally, subsection d. of the class action section states that "Plaintiff's [sic] claims stand on the evaluation that Defendants have violated _____." (Compl. ¶ 3.1 d.) This incomplete sentence captures the complaint's fatal flaw – its complete failure to identify what laws Plaintiffs believe the IBEW and Hill have violated.

Hill was served with the complaint at his home in the Commonwealth of Virginia on May 16, 2015.

## I. THE COMPLAINT FAILS TO PROVIDE FAIR NOTICE OF PLAINTIFFS' CLAIMS

This Opinion and Order adopts the findings and conclusions set forth in the Opinion and Order granting defendant IBEW's Motion to Dismiss based on the complaint's failure to provide fair notice of Plaintiffs' claims. (Dkt. No. 27, at 5-10). Nowhere in the complaint do the plaintiffs allege what, if any, laws Hill allegedly violated, nor do they allege when Hill engaged in the conduct vaguely set forth in the complaint. Accordingly, the complaint is dismissed against Hill under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## II. THIS COURT LACKS PERSONAL JURISDICTION OVER HILL

The complaint against Hill is also dismissed under Rule 12(b)(2) because this Court lacks personal jurisdiction over Hill. A federal district court can assert personal jurisdiction over a defendant only if that defendant is amenable to service of process. Federal Rule of Civil Procedure 4(k)(1)(A) provides that service of a summons establishes the court's jurisdiction over any person "who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located." Fed. R. Civ. P. 4(k)(1)(A). Accordingly, this Court can exercise personal jurisdiction over Hill only if Hill could be subjected to the jurisdiction of an Oklahoma state court. The plaintiffs bear the burden of establishing that this Court has personal jurisdiction over Hill. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998); *Kendall v. Turn-Key Specialists*, Inc., 911 F. Supp. 2d 1185, 1194 (N.D. Okla. 2012).

For this Court to exercise personal jurisdiction over Hill, a non-resident defendant, the plaintiffs must prove facts to satisfy the Oklahoma long-arm statute and the Due Process Clause of the United States Constitution. 12 Okla. Stat. § 2004(F); *Conoco, Inc. v. Agrico Chem. Co.*, 115 P.2d 829, 834 (2004). "Because Oklahoma's long-arm statute permits the exercise of jurisdiction that is consistent with the United States Constitution, the personal jurisdiction inquiry under Oklahoma law collapses into the single due process inquiry." *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000).

As the Supreme Court has frequently stated, "a state court may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum State." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). *Accord Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). "[T]he defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen*, 444 U.S. at 297.

Personal jurisdiction may be either general or specific. General jurisdiction over a nonresident defendant exists only if the defendant maintains "continuous and systematic" contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). Specific jurisdiction exists only in a suit "arising out of or related to the defendant's contacts with the forum…." *Id.* at 414 n.8.

Specific jurisdiction, however, cannot be based on forum contacts that are "random, fortuitous or attenuated…." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 475-76 (1985). Rather, "it is essential in each case that there be some act by which the defendant purposefully avails [him]self of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

According to Hill's affidavit, which is not contradicted, his contacts with the State of Oklahoma have been extremely limited. He was in Oklahoma in August of 2014 for a few days to meet with officials of IBEW Local No. 584 in Tulsa, Oklahoma, and was in the state in 2009 for an IBEW meeting. Other than those two occasions, Hill has not been in Oklahoma during the last twenty years. (Hill Aff. ¶¶ 7-9.) He does not own property in Oklahoma, nor does he conduct any business for pecuniary gain in the state. (*Id.* ¶¶ 5-6.) Finally, he was not served with the summons in Oklahoma, but was instead served at his place of residence in the Commonwealth of Virginia. (*Id.* ¶4.)

Hill's limited contacts with Oklahoma do not constitute the "continuous and systematic" contacts required to establish general jurisdiction. e.*g.*, *Shrader v. Biddinger*, 633 F.3d 1235, 1243 (10th Cir. 2011) (to establish general jurisdiction, contacts must approximate physical presence within the borders). Presence in the state twice in the past twenty years, and for only a handful of days, is neither continuous nor systematic.

To establish specific jurisdiction, plaintiffs must show that Hill had contacts with Oklahoma such that he purposefully directed his activities at residents of the forum and that Plaintiffs' claims arise out of or result from action that Hill took to create a substantial connection with Oklahoma. *OMI Holdings*, 149 F.3d at 1091; *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1160 (10th Cir. 2010). Plaintiffs fail to meet that burden.

In their response brief, Plaintiffs appear to concede that they cannot carry the burden of establishing that this Court has personal jurisdiction over Hill. Instead, they admit that "they wish to have more information." (Pls. Response at 3) Accordingly, plaintiffs fail to establish that the Court has personal jurisdiction over Hill.

Moreover, even if Plaintiffs could establish their claims arise out of Hill's purposeful activities in the state, they must also demonstrate that the exercise of personal jurisdiction over Hill would not offend "traditional notions of fair play and substantial justice." *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1276-77 (10th Cir. 2005). Determining whether jurisdiction over Hill would be consistent with fair play and substantial justice is assessed by weighing five factors:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social problems.

*TH Agric. & Nutrition, LLC v. ACE European Group Ltd.*, 488 F.3d 1282, 1292 (10th Cir. 2007). These factors are weighed against the strength of the defendant's

minimum contacts such that "the weaker the plaintiff's showing on [minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *Id.* (brackets in original) (quoting *OMI Holdings*, 149 F.3d at 1092). As set forth above, Hill's contacts with the State of Oklahoma are very weak. Thus, to defeat jurisdiction, Hill need show little with respect to the unreasonableness of exercising personal jurisdiction over him.

With respect to the other factors, although Hill concedes that Oklahoma may have an interest in resolving the dispute, without knowing what the plaintiffs are claiming Hill did, when he did it, and what laws he allegedly violated, it is impossible to address the other factors applicable to determining whether fair play and substantial justice counsel against finding personal jurisdiction. Nevertheless, given the extraordinarily limited contacts Hill has had with the State, the burden placed on him if jurisdiction is exercised, fair play and substantial justice require the dismissal of Hill.

Finally, as set forth in his affidavit, all of Hill's contacts with Oklahoma have been within the scope of his employment as the chief executive officer of the IBEW. Although it is unclear whether the corporate or "fiduciary" shield doctrine applies in the State of Oklahoma, assuming it does, Hill's contacts with Oklahoma cannot form the basis for exercising personal jurisdiction over him.

"Under the fiduciary shield doctrine, exercise of personal jurisdiction over an individual may not be based solely on acts the individual performed in a purely representative capacity." *Kendell v. Turn-Key Specialists, Inc.*, 911 F. Supp. 2d

10

1185, 1195 (N.D. Okla. 2012). Accordingly, "where the acts of individual principals of a corporation in the jurisdiction were carried out solely in the individuals' corporate or representative capacity, the corporate structure will ordinarily insulate the individuals from the court's jurisdiction." *Id.* (quoting *Ten Mile Indus. Park v. W. Plains Serv. Corp.*, 810 F.2d 1518, 1527 (10th Cir. 1987)). This principle is based on the view that it would be "unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer." *Kendall*, 911 F. Supp.2d at 1195. (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 902 (2d Cir. 1981)).

The fiduciary shield doctrine has been applied to dismiss union officials where their sole contacts with the forum state were undertaken in their representative capacity. The Court recognizes that the State of Oklahoma has not yet adopted – nor has it rejected – the fiduciary shield doctrine. *Newsome v. Gallacher*, 722 F.3d 1257, 1278-79 (10th Cir. 2013). Nevertheless, in this case, where the chief executive officer of an organization has extremely limited contacts with the State, the doctrine may be applied to protect against such an individual being brought before Oklahoma courts based on contacts made in his capacity as an officer.

### III. PLAINTIFFS FAILED TO SERVE HILL WITHIN THE TIME PERIOD ALLOTED BY THE FEDERAL RULES

Not only does the complaint fail to state a claim against Hill, and this Court's lack of personal jurisdiction over him, but the summons and complaint were served

too late, and must be dismissed under Rule 12(b)(5) for insufficient service of process. Accordingly, although the complaint is dismissed with prejudice for failure to state a claim and for lack of personal jurisdiction, it is also dismissed due to the plaintiffs' failure to serve it timely.

Rule 4(m) of the Federal Rules of Civil Procedure provides that a plaintiff has 120 days from the filing of the complaint to effectuate service. Here, the complaint was filed on January 14, 2015, and Hill was not served until May 16, 2015 – 122 days later.

"If a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against the defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). When a plaintiff fails to file within the time frame set forth in Rule 4(m), the court first determines whether the plaintiff has demonstrated good cause for its failure. *Espinoza v. United States*, 52 F.3d 838, 841 (10th Cir. 1995).

As a general matter, "inadvertence or negligence alone do not constitute 'good cause' for failure of timely service." *In re Kirkland*, 86 F.3d 172, 176 (10th Cir. 1996). Moreover, an attorney's failure to monitor a hired process service to ensure that the summons is timely filed, does not constitute good cause. *Cox v. Sandia Corp.*, 941 F.2d 1124, 1125-26 (10th Cir. 1991); *Petrucelli v. Bohringer and Ratzinger*, 46 F. 3d 1298, 1307 (3d Cir. 1995) ("[R]eliance upon a third party or on a process server is an insufficient basis to constitute good cause for failure to timely

serve, and is also an insufficient basis for granting an extension of time to effect service.") Here, the plaintiffs failed to demonstrate good cause for their failure to serve Hill in a timely fashion.

Accordingly, Hill's Motion to Dismiss (Dkt. No. 10) is granted.

**IT IS SO ORDERED this 7th day of August, 2015.**

_____
James H. Payne
United States District Judge
Northern District of Oklahoma